UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

Case No. 08-CR-20601
HON. GEORGE CARAM STEEH

JAMES HORN (D-12),

    Defendant.
_____/

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS IN PART AND
SETTING SUPPRESSION HEARING REGARDING ORAL STATEMENTS [DOC. 182]

    An Indictment was returned on November 12, 2008 charging 22 defendants in six counts.  The charges include a marijuana conspiracy, conspiracy to launder monetary instruments, continuing criminal enterprise, mortgage fraud, identity fraud, and forfeiture.  James Horn is charged in Count Two alleging money laundering and Count Six criminal forfeiture.

    Count Two charges that 11 of the defendants conspired to engage in financial transactions knowing that funds used in the transactions were proceeds of the drug distribution alleged in the Indictment.  Section 18 USC § 1956(a)(1)(A)(i) makes it an offense to engage in a financial transaction "with the intent to promote the carrying on of specified unlawful activity."  Section 18 USC § 1956(a)(1)(B)(I) makes it an offense to engage in financial transactions "with an intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  Section 18 USC § 1956(h) makes it an offense to conspire to money launder.

    Horn filed a motion to suppress evidence, contending that (1) there was no probable cause to believe that he was involved in criminal conduct, and therefore no support for the initial warrant to search his house, that (2) the second search warrant

was also void because it was based on the initial warrant, and that (3) the government used illegally obtaining statements from Horn to assist them in their searches.

The Fourth Amendment requires that a search or seizure be supported by probable cause, which is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." United States v. Abboud, 438 F.3d 554, 571 (6th Cir. 2006) (quoting United States v. Padro, 52 F.3d 120, 122-23 (6th Cir. 1995). An affidavit in support of a search warrant "must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." Abboud, 438 F.3d at 571 (quoting United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005). A court reviewing probable cause must look at the "totality of the circumstances" establishing probable cause, which is a "practical, non-technical conception that deals with the factual and practical considerations of everyday life." Abboud, 438 F.3d at 571 (quoting Frazier, 423 F.3d at 531). The reviewing court should also give great deference to the magistrate judge's finding of probable cause. Id*.;* United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000).

I.  Primary Search Warrant

    a.  Probable Cause

On November 18, 2005, Magistrate Judge Scheer reviewed Drug Enforcement Administration Task Force Officer (TFO) Chad Allan's affidavit in support of a search warrant for 2918 Woodbine, Waterford, Michigan, the residence of James Horn. The affidavit describes Allan's background in investigating the financial aspects of drug trafficking organizations. Allan then describes the investigative background of the case which focused on Brian Osburn. In Paragraph 6, Allan recounted what he had learned with respect to Brian Osburn's financial dealings, his use of nominees or straw buyers on real estate purchases, and his lack of credit history.

Allan alleges at Paragraph 7 that James Horn is "linked" to Brian Osburn because Horn "is a real estate 'broker'". Defendant states that Horn is not and was not a "real estate broker" at the time of the Application. At oral argument, the government stated that public data bases revealed that Horn was a real estate broker in Colorado and Florida. Horn's attorney disputed this information and explained that Horn is a mortgage broker in Florida.

Paragraph 7 further alleges that Horn is connected to three properties associated with Osburn's drug trafficking organization, specifically 2850 Woodbine Drive, 63 Ruth, and 49972 Proctor Road.

In his Affidavit, Allan alleges that Horn was a neighbor of Osburn, who resided at 2850 Woodbine. Allan was told by his confidential informant that in late fall 2003 or early winter 2004 Osburn was "elated" over an agreement by which he was to stop renting 2850 Woodbine and purchase it from the owner. Records showed that in October 2003, Horn purchased 2850 Woodbine, and then refinanced it in January 2004. Allan stated his belief that Horn was a "straw buyer" of the property for Osburn.

Allan's affidavit states that he reviewed mortgage records relating to Jason Osburn and 49972 Proctor Road. An examination of the documents revealed that "Modern Mortgage Company", located at 2918 Woodbine, was involved in processing a mortgage for 49972 Proctor. In addition, Horn's name appeared in the mortgage documents. Defendant argues that in the report of investigation dated November 4, 2005, two weeks before the date of his affidavit, the Affiant indicated that Modern Mortgage Corp. had its registered office at 25900 Greenfield, Ste 206, Oak Park, MI.

The affidavit next refers to the property at 63 Ruth, Pontiac, Michigan. The confidential informant told Affiant that the property was owned by Brian Osburn, but public records showed that 63 Ruth was actually owned by Clarence Kaechele.

3

Kaechele purchased 63 Ruth from Horn in June 2004. Affiant alleges that Kaechele is a "straw buyer" for Osburn. Defendant argues that the lack of records of a purchase by Osburn is of no consequence because that would be consistent with a land contract purchase.

The affidavit alleges that Osburn received a check from a title company in the amount of $80,442.80. It is alleged Osburn deposited $48,000 into his own bank account and the remaining $32,442.80 was deposited in an account held by Horn.

Finally, the affidavit alleges that surveillance shows Horn spent long periods of the work day at home. The Affiant avers that this information, along with the mortgage documents on the Proctor Road property, indicates Horn worked out of his home.

Allan concludes that Horn is a "real estate professional who is providing real estate-related money laundering services to the drug trafficking organization from his home-based office." Defendant Horn argues that Allan's Affidavit lacks probable cause to search his residence and constitutes only a "bare bones" affidavit containing "uncorroborated hunches, suspicions and baseless conclusions."

When reviewing probable cause, the Court may only look within the four corners of the affidavit. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005). The affidavit in this case connects Horn with three properties that are associated with Brian Osburn's drug trafficking operation. Osburn rents 2850 Woodbine from Horn. Horn's name appears in the mortgage documents for the Proctor Road property, and Horn's home address is listed as the address of the mortgage company involved in the transaction. It is immaterial that Affiant Allan was aware that Modern Mortgage had a registered address in Oak Park, Michigan, according to a public records search. The documents related to the financing of the Proctor Road property include a relevant reference to Horn, Modern Mortgage, and 2918 Woodbine. Horn sold 63 Ruth to

4

Clarence Kaechele, and the confidential informant told Affiant that Osburn owns that property. There is also evidence that Osburn deposited a large sum of money in Horn's bank account. Finally, surveillance revealed that Horn spends long periods of the work day in his home. If the court disregards the statement that Horn is a real estate broker, as well as the speculation as to straw buyers, there remains sufficient information in the affidavit to establish probable cause to believe that evidence of a crime will be located at 2918 Woodbine. The Court does not find that a suppression hearing is necessary with regard to the initial search warrant.

    b. Franks Hearing

"A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); United States v. Barone, 584 F.2d 118, 121 (6th Cir.1978), cert. denied, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979). He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. Franks, 438 U.S. at 171, 98 S.Ct. at 2684. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause. Id.

If probable cause exists absent the challenged statements, a defendant is entitled to no more; however, if such cause does not exist absent the challenged statements, he is entitled to a hearing if he requests one. He must show at the hearing, by a preponderance of the evidence, that false statements were made either intentionally or with reckless disregard for the truth and that without these statements

5

there is insufficient content in the affidavit to support a finding of probable cause. If he makes this showing, the evidence should be suppressed. Id. 438 U.S. at 155-56, 98 S.Ct. at 2676." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).

The Court has already found that the affidavit supports a finding of probable cause, without considering the challenged statements. Moreover, defendant's offer of proof falls far short of anything supporting intentional or reckless misrepresentations in the affidavit. A Franks hearing is therefore not necessary in this case.

    c.  Documents or Computers

Attachment B to the affidavit is labeled a "Document Search Warrant" and includes a list of items to be searched and seized. Paragraph A refers to "all paperwork and records relating to the laundering of drug proceeds or the acquisition of assets." Paragraph B refers to "any business or other records regarding the sale, purchase, or transfer of real property." Paragraph C refers to "any document, record, digital or electronic data or technology which may lead to the identification of others conspiring to launder the proceeds of the sale of controlled substances." Paragraph D refers to "currency and/or other monetary instruments or banking instruments . . ."

The Affidavit in Support of Search Warrant, at Paragraph 2, subparagraph A, states:

> It is also common for these traffickers to maintain electronic equipment/devices that are used to facilitate their criminal activities, to include but not limited to, cellular telephones, blackberry/blueberry devices, palm pilots, paging devices, personal computers, . . .

Magistrate Judge Scheer reviewed the affidavit, the application and the warrant before authorizing and issuing the warrant.

The agents who searched 2918 Woodbine seized a Compaq CPU and a Diplomat Premier CPU. Defendant Horn argues that the computers are not within the

6

scope of the list of things to be seized. The government argues that items not specifically described in a search warrant may be seized if they are "reasonably related" to the offense described in the warrant. United States v. Wright, 343 F.3d 849 (6th Cir. 2003).

The Court finds that the initial search warrant is broad enough to include the seizure of the computers in that it specifically refers to "electronic data", and "digital or electronic data or technology". Allan's affidavit further delineated items to be searched and seized, including "electronic equipment/devices . . . personal computers . . . ." Two separate search warrants were subsequently obtained for the imaging of the computer hard drives before they were searched. The Court finds that the initial search warrant affidavit in this case supports a finding of probable cause to seize Mr. Horn's computers.

II. Follow-up Search Warrant

During the execution of the initial search warrant at 2918 Woodbine, a law enforcement officer opened a kitchen cupboard and saw in plain view a small wooden box, known to the officer as a "one hit box." A "one hit box" is used to store marihuana. Agents detected an odor coming from the box. Agents also entered the bedroom and detected an odor of marihuana coming from a bathroom nearby. This information was contained in an affidavit prepared by Chad Allan, and a search warrant for controlled substances and weapons was issued by Magistrate Judge Majzoub.

Looking within the four corners of the affidavit in support of a search warrant for controlled substances, the Court finds probable cause sufficient to justify the belief that drugs and drug-related evidence would be found at 2918 Woodbine.

III. Oral Statements Made by Horn

The agents detained Mr. Horn in handcuffs for many hours while they conducted their search of his house. Mr. Horn was not read his *Miranda* rights. Mr. Horn asked to

7

contact an attorney but the agents refused.  Mr. Horn was questioned by the agents and they have not provided a report of any statements made by Horn during the search.  The government has conceded that under the circumstances, statements made by Horn would be inadmissible in its case-in-chief.

Defendant argues that the government acknowledges Horn made inculpatory statements and it is probable the agents used those statements to assist in their search, or subsequent investigation of the conspiracy.  It is unknown what, if any, evidence followed from the oral statements, and whether such evidence is subject to suppression.  At oral argument the government stated that it did not know if the Agent Scott Roberts, who was present during the execution of the search warrant, has rough notes that include statements made by Mr. Horn.

Although the government's position is that it does not intend to introduce Horn's oral statements obtained during the execution of the search warrant on his home during its case-in-chief, the Court does not have enough information to make a determination with regard to the reach of the evidence sought to be suppressed.  Accordingly, a suppression hearing will be set with regard the suppression of evidence derived from Horn's oral statements.  The government should furnish the rough notes, if any exist, related to such statements.

A suppression hearing on the oral statements made by Horn during the execution of the search warrant of 2918 Woodbine will be held on September 24, 2009 at 11:00 a.m.

Dated:  September 10, 2009

S/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 10, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

2:08-cr-20601-GCS-PJK   Doc # 194   Filed 09/10/09   Pg 9 of 9   Pg ID 635