UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                          Case No. 08-CR-20601
                                          HON. GEORGE CARAM STEEH

JAMES HORN (D-12),

    Defendant.

_____/

ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS DERIVATIVE EVIDENCE [DOC. 182]

      This matter came before the Court on defendant James Horn's motion to suppress derivative evidence obtained during the execution of search warrants. The Court held an evidentiary hearing on the motion on September 24, 2009. For the reasons set forth below, defendant's motion to suppress is DENIED without prejudice.

      Search warrants were executed on Horn's house on November 21, 2005. During the search, which lasted from approximately 8:00 a.m. to 3:30 p.m., Horn was present in the home, and was handcuffed. Horn made oral statements to the officers during the search of his home, which the government has agreed not to use in the presentation of its case-in-chief at trial. Horn's motion seeks to suppress all of the evidence of Horn's statements entirely and any evidence derived therefrom.

      The DEA-6 Report of Investigation prepared by Agent Robert Lagana, following the events at Horn's house on November 21, 2005, contains information attributable to statements by Horn at the time of the search as follows:

    - Horn volunteered information that the marijuana found in Horn's bed stand was supplied by Brian Osburn. Osburn owed Horn money for utilities on a house that Horn owns and Osburn rents. Horn stated that the marijuana found in Horn's

bed stand was payment for that debt.

- Osburn pays $3,000.00 a month to Horn for rent, in cash.

- Horn has not conducted any other financial transactions with Osburn other than receiving the rent for 54 Myra and 2918 Woodbine (probably meant 2850 Woodbine).

- Horn became acquainted with Osburn when Osburn rented the property at 54 Myra from Horn.

A proffer meeting with government agents and Horn took place on February 22, 2006.  The DEA Report of that meeting mentions statements attributable to Horn made on November 21, 2005.  Paragraph 28 provides that, during his questioning, DEA Task Force Officer Chad Allan references Horn's November 21, 2005 statement that he was taking a loss by renting the house to Osburn, referring to 2850 Woodbine.  At paragraph 38, Allan notes that at the February 22, 2006 meeting, he "reminded Horn that on November 21, 2005, Horn told the DEA that he knew Osburn was a drug-dealer and added that he [Horn] had nothing to do with Osburn's drug-dealing activities."

Horn asks the Court to suppress these statements.  Horn also requests the Court reaffirm its order to the government to review all of its files and provide any rough notes of the activities of agents on November 21, 2005 during the execution of the search warrants at Horn's residence.  Finally, Horn requests the Court allow him to challenge evidence that may be offered by the government at trial against Horn that may be derived from statements made by Horn on November 21, 2005.

Both Special Agent Scott Roberts and Officer Allan testified that they did not take notes on November 21, 2005.  According to the government, the only reference to Horn's statements made during the execution of the search warrant are contained in Lagana's report.

Horn entered into a *Kastigar* letter agreement with the government, and was bound by those obligations at his February 22, 2006 proffer interview.  The government explains that the agents' references to Horn's November 21 statements during the proffer interview protected defendant from perpetuating untruthful statements, which could have been used against him.  The reference to Horn's prior statements during this interview did not transform his proffer into evidence derived from an illegal search.  Testimony established that all of the information received from Horn at the time of the search was known as a result of the extensive investigation that took place prior to the execution of the search warrants.

Agent Roberts and Officer Allan testified at the suppression hearing that the government already had obtained financial records and transaction records prior to obtaining the initial search warrants that implicated Horn.  Other cooperating individuals provided information corroborating the records and other evidence against Horn.  Horn has not been able to show that any of his statements led to the discovery of derivative evidence.

Accordingly, IT IS ORDERED,

1.  The government is under a continuing duty to turn over rough notes from the execution of the search warrant, if any are discovered.

2.  Statements made by Horn during the execution of the search warrant are inadmissible at trial in the government's case-in-chief.

3. Horn's motion to suppress derivative evidence is DENIED without prejudice. Horn can challenge derivative evidence at trial tied directly to Horn's statements during the search. As yet, Horn has not been able to do this.


Dated: October 29, 2009

                                        S/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 29, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---